## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

ANTONIO MANGO,                               :
                                             :
         Plaintiff,                          :
                                             :
v.                                           :
                                             :        CASE NO.: 1:14-cv-00049 (LJA)
MITCHELL COUNTY, GEORGIA;                    :
BILL TERRY, Individually and in His          :
Official Capacity as Warden of Mitchell      :
County Correctional Institute,               :
                                             :
         Defendants.                         :
_____            :

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 11). For the following reasons, Defendants' Motion is **GRANTED**.

## BACKGROUND

Mitchell County Correctional Institute ("the Prison") is a prison operated by Mitchell County, Georgia. (Doc. 11-2, ¶¶ 1,3). Plaintiff, Antonio Mango, who is African American, is a certified corrections officer who was hired by Mitchell County on November 5, 2012 to work at the Prison. *Id.* at ¶ 5; (Doc. 11-1 at 5). Corrections officers that work inside the prison are divided into teams, referred to as "Keys," each of which has a supervisor. (Doc. 11-2, ¶¶ 10-13). On December 4, 2012, Ronald Mock, a white male, was the supervisor of Plaintiff's Key and Plaintiff overheard Mock talking on his telephone. *Id.* at ¶¶ 12,13; (Doc. 14 at 2). During the course of that conversation, Plaintiff heard Mock say "they were hiring too many niggers." *Id.*

A few weeks later, Lt. Derrick Hayes approached Plaintiff and another black employee and advised them that they were not allowed to have cell phones inside the Prison. (Doc. 11-2, ¶¶ 15-16). Plaintiff told Lt. Hayes that the cell phone policy should be fairly

1

applied to everyone and asked to explain his comment in private. *Id.* at ¶¶ 18,19. Plaintiff testified that he noticed Officers Mock, Hendley, Thomas, Dumont, and Harden bringing in cell phones but did not witness anyone reprimand them. (Doc. 13 at 116:5-16). Plaintiff met with Lt. Hayes, Mock, and Charles Griffin in Lt. Hayes' office, where he told Lt. Hayes that he and others were being treated unfairly because of the slur he overheard and the unfair application of the cell phone policy. (Docs. 11-2 at  ¶¶ 20-22; 13 at 117:1-8).

Plaintiff later had a second meeting with Lt. Hayes, where he reiterated his complaint that he was being treated unfairly because of the cell phone policy and racial slur. (Doc. 11-2 at ¶¶ 23-26). He also complained that certain black certified officers were being paid less money than non-certified white officers. *Id.* Plaintiff has provided no details regarding the allegations of unequal pay. (Doc. 14).  A couple of weeks later, Plaintiff met with Warden Terry and Lt. Hayes in the Warden's office to address his concerns. *Id.* at ¶¶ 27-28. During the meeting, Plaintiff told Warden Terry that he felt he was being treated "unfairly" and that he had heard an inappropriate comment. *Id.* at ¶¶ 28-32. Plaintiff says that he never got the opportunity to explain the circumstances surrounding the comment or how he was being treated because Warden Terry called him "a cancer to the institute" and ended the meeting. (Doc. 14 at 3).

On February 14, 2013, Plaintiff was reassigned from the day shift to the night shift. (Docs. 11-2, ¶ 33; 13 at 71:24-72:3). Charles Griffin, a white male, was reassigned to the night shift at the same time as Defendant. (Doc. 11-2 at ¶ 37). A couple of weeks after being reassigned to the night shift, Plaintiff overheard Griffin say that "Mitchell County Correctional Institution is changing, they continued to hire blackies." *Id.* at ¶ 38.

Mitchell County has a six month probationary period for new employees. *Id.* at ¶ 42. According to Defendants, Plaintiff was terminated prior to the end of the probationary period because Warden Terry did not consider Plaintiff, who had missed nine days of work and two mandatory staff meetings, a reliable employee. *Id.* at ¶¶ 43-45. Plaintiff was terminated on April 22, 2013. *Id.* at ¶ 46.

Plaintiff filed a Charge of Discrimination with the EEOC, which was dismissed on December 17, 2013. (Doc. 1-2, Ex. B). The Dismissal notified Plaintiff of his right to sue Defendants in state or federal court within 90 days of receipt of the notice. *Id.*

## PROCEDURAL HISTORY

On March 20, 2014, Plaintiff commenced this action against Mitchell County, GA and Bill Terry both individually and in his official capacity as Warden of Mitchell County Correctional Institute. (Doc. 1). Defendants moved for summary judgment on May 19, 2015 (Doc. 11), and Plaintiff responded on October 15, 2015 (Doc. 14). Plaintiff failed to attach a Statement of Material Facts. *Id.* Defendant replied on October 30, 2015. (Doc. 16). As such, Defendants' Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) *citing Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.

Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) *quoting* <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

Local Rule 56 requires that a respondent attach to the response "a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." M.D. Ga. L.R. 56. "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Because Plaintiff failed to attach a separate statement of facts to its response, Defendants' statement of facts is deemed to have been admitted. *See Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014). Additionally, Local Rule 7.2 requires respondent's counsel desiring to submit a response, brief, or affidavit to do so "within twenty-one (21) days after service of movant's motion in brief." M.D. Ga. L.R. 7.2. While Plaintiff responded to Defendant's Motion for Summary Judgment 149 days after filing, well

4

outside of the permitted time frame, the Court will nonetheless consider Plaintiff's response as if timely filed.

In the Eleventh Circuit, "a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *U.S. v. Delbridge*, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) *citing Trustees of Central Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004); *see also Mason*, 24 F. Supp. 3d at 1260. Rather, the Court is "required to make an independent review of the record" and assess the merits of the arguments before deciding the summary judgment motion; however, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Mason*, 24 F. Supp. 3d at 1260. The Court is also not obligated to "read minds" or "construct arguments or theories that a party has failed to raise in briefing." *Id.* at 1261.

## DISCUSSION

Defendants moved for summary judgment on all of Plaintiff' claims under Title VII, 42 U.S.C. § 1981, the Fourteenth Amendment, and state law causes of action for tortious interference with a contract and intentional infliction of emotional distress. (Doc. 11-1). Plaintiff, however, only responded to Defendants' arguments on the Title VII claims. When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims. *See Jolley v. Triad Mechanical Contractors*, 2015 WL 1299852, at *8, n. 16 (M.D. Ga. 2015); *Sentinel Ins. Co., Ltd. V. Action Stop, LLC*, 958 F.Supp.2d 1368, 1381 (M.D. Ga. 2013); *Hammond v. Gordon County*, 316 F. Supp. 2d 1262, 1280 (N.D. Ga. 2002). As such, Defendants' Motion for Summary Judgment on Plaintiff's state law claims and Plaintiff's claims under 42 U.S.C. § 1981 and the Fourteenth Amendment is **GRANTED**. The Court considers Plaintiff's Title VII claims below.

## I.  Disparate Treatment

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff argues that Defendants violated Title VII by terminating Plaintiff's employment because of his race. "Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* Plaintiff presented no direct evidence in this case. When there is no direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence, using the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). To establish a prima facie case for disparate treatment under this framework, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to adverse employment action; (3) his employer treated similarly situated white employees more favorably; and (4) he was qualified to do the job. *Id.* If Plaintiff satisfies these elements, then Defendant must show a legitimate, non-discriminatory reason for its employment action. *Burke-Fowler v. Orange County, Fla*, 447 F.3d 1319, 1323 (11th Cir. 2006). To defeat a motion for summary judgment, the Plaintiff must then prove that the reason provided by the defendant is a pretext for unlawful discrimination. *Id.*

The parties do not dispute that Plaintiff is part of a protected class, was terminated from his position, and was qualified to be a corrections officer. Thus, at issue is whether Plaintiff has shown that Defendants treated similarly situated white employees more favorably. Plaintiff compares himself to two white employees, Henley and Dumont, who were also terminated before the end of their probationary period. Plaintiff's argument is essentially that the two white employees were fired for legitimate misconduct, while he was fired for less egregious conduct. Courts, however, are to refrain from "second guessing employer's reasonable decisions and confusing apples with oranges." *Burke-Fowler*, 447 F.3d

at 1123. Other than arguing, generally, that his two comparators were fired for legitimate reasons and he was not, Plaintiff has presented no evidence that the comparators were similarly situated. As they were also fired, and Plaintiff has presented no evidence that the terms of severance were more favorable for the two comparators, he has failed to make a prima facie case for disparate treatment.

## II.   Hostile Work Environment

A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) *quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "A plaintiff wishing to establish a hostile work environmental claim must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability." *Id.*

This claim turns on whether or not the conduct Plaintiff complains of was objectively severe enough to alter the terms and conditions of employment. Plaintiff argues that discriminatory enforcement of the cell phone policy, Mock's statement using the term "niggers," Griffin's statement using the term "blackies," and Warden Terry's statement calling him "a cancer on the institution" created an objectively hostile working environment. (Doc. 14 at 6-9). "Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993). There is a subjective and objective component to this determination. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1249 (11th Cir. 2014). The employee must subjectively perceive the harassment as being severe, but the objective severity should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id.* Objective considerations include:

7

(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Palmer v. McDonald*, 624 Fed. Appx. 699, 703 (11th Cir. 2015); *see also Id.* at 1276.

The Eleventh Circuit recently held that an employee's work environment was not objectively hostile even where the employee frequently saw racist graffiti in the men's restrooms, frequently saw Confederate flags, and overheard a slur used several times over the course of a few years. *Adams*, 754 F.3d at 1254. In this case, the Plaintiff's report of two racial slurs falls short of the high standard the law requires to find an objectively hostile work environment. *See also Barrow v. Georgia Pacific Corp.*, 114 Fed. Appx. 54, 58 (11th Cir. 2005)(holding that "isolated and sporadic instances of racial harassment" did not create an objectively hostile work environment).

Furthermore, claims based on "subjective perception and speculation rather than specific facts" may not be used to establish an objectively hostile work environment. *Brown v. Progress Energy*, 364 Fed. Appx. 556, 558 (11th Cir. 2010); *see also Pierri v. Cingular Wireless, LLC*, 397 F.Supp.2d 1364, 1378 (N.D. Ga. 2005). The only evidence Plaintiff offered that the phone policy was applied discriminatorily is his observation that some white officers had cell phones and that Plaintiff did not observe them receive a reprimand. As the conduct Plaintiff complains of was infrequent, was not physically threatening, and did not prevent Plaintiff from completing his duties as a corrections officer, it cannot be said to be sufficiently severe enough to alter the terms and conditions of employment, and Plaintiff has failed to establish that he was subjected to a hostile work environment.

### III.    Retaliation

Plaintiff argues that Defendant retaliated against him by reassigning him to the night shift and then terminating his employment in response to complaints about unequal wages and unfair treatment. (Doc. 14 at 13). Under Title VII, employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff presents no direct evidence of retaliation. Thus, the *McDonnell Douglas* burden shifting framework applies. *See Thomas v. CVS Pharmacy*, 336 Fed. Appx. 913, 915 (11th Cir. 2009) ("[A] retaliation claim based on circumstantial evidence is analyzed according to the *McDonnell Douglas* framework.").

Plaintiff has set forth a prima facie case of retaliation. To make a prima facie case for retaliation using circumstantial evidence, Plaintiff must show: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Plaintiff engaged in protected activity. "To engage in protected activity under the opposition clause of § 2000e-3a, a plaintiff must have a good faith, objectively reasonable belief that the employer is engaging in unlawful employment practices." *Harris v. Florida Agency for Health Care Admin.*, 611 Fed.Appx. 949, 951 (11th Cir. 2015). The plaintiff's belief is measured "against the substantive law at the time of the offense to determine whether his belief was objectively reasonable." *Id.* Plaintiff heard his supervisor use a racial slur and a coworker state that too many people in his protected class had been hired. He also believed that the telephone policy was applied differently to white and black employees and that there was a pay differential between white and black employees. By complaining to Lt. Hayes and Warden Terry about these grievances, Plaintiff engaged in a protected activity. *See Bolton v. Bladwin County Public Schools*, 627 Fed.Appx. 800, 803 (11th Cir. 2015) ("Protected activities include…the voicing informally of a complaint to superiors…"); *see also Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

Termination is clearly an adverse employment action. *See Crawford*, 529 F.3d at 970. Plaintiff, however, has not presented evidence to support his claim that reassignment to the night shift is an adverse employment action. In *Burlington*, the Supreme Court  broadened the type of employer conduct considered actionable in retaliation cases "from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008) citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). A materially adverse

action can be anything that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Plaintiff, however, presented no evidence that reassignment had a materially adverse effect on him or dissuaded him from bringing or supporting a charge of discrimination.

Plaintiff has presented evidence sufficient to establish a causal connection between the protected conduct and the termination. "To demonstrate a causal connection between a protected activity and an adverse employment action, the plaintiff must show that: (1) the decisionmakers knew of his protected activity; and (2) the protected activity and adverse action were not wholly unrelated." *Harris v. Florida Agency for Health Care Admin.*, 611 Fed.Appx. 949, 951 (11th Cir. 2015). "In most cases, a close temporal proximity between the protected conduct and the adverse action creates a genuine issue of material fact about the causal connection between the two." *Id.*; *see also Hulbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). Under Eleventh Circuit precedent, a two month gap between the protected activity and adverse employment action is close enough to infer causation sufficient to make a prima facie case. *See Robinson v. LaFarge North America, Inc.*, 240 Fed. Appx. 824, 829 (11th Cir. 2007). Defendants admit that Plaintiff complained that he was treated unfairly in meetings with Warden Terry and Lt. Hayes and that the termination happened just over two months after Plaintiff's meeting with Warden Terry. (Doc. 11-2).

As Plaintiff has set forth a prima facie case of retaliation, Defendants must offer a non-retaliatory reason for the employment decision. *See Thomas*, 336 Fed. Appx. at 915. Defendants argue that Plaintiff's termination was legitimate because Warden Terry found Plaintiff to be unreliable. That Plaintiff was absent from work on nine days and missed two mandatory staff meetings supported Warden Terry's decision to fire Plaintiff. (Doc. 11-3, ¶ 28).  Excessive absenteeism is a legitimate and nondiscriminatory explanation for termination. *See Wills v. Postmaster General*, 300 Fed. Appx. 748, 752 (11th Cir. 2008); *Cunningham v. Nature's Earth Pellets, LLC*, 433 Fed. Appx. 751, 752 (11th Cir. 2011). Furthermore, the Employee Handbook provides that, during the probationary period, "the employee has no right to expect continued employment in that position and employment

can be terminate at any time with or without reason and without the right of appeal." (Doc. 11-4 at 27).

Defendants having set forth a nondiscriminatory rationale for the employment decision, the burden shifts to Plaintiff to show that the proffered reason is pretextual. *See Thomas*, 336 Fed. Appx. at 915. "In order to show pretext, the plaintiff must 'demonstrate that the proffered reason was not the true reason for the employment decision.'" *Jackson v. State of Alabama State Tenure Com'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) *quoting Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (11th Cir. 1981). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chappman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). At the summary judgment stage, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson*, 405 F.3d at 1289.

Plaintiff argues that Defendants' excuse is pretextual because the evidence shows that there are genuine disputes of material fact as to whether Plaintiff's absences were excused and whether Plaintiff had notice of the mandatory staff meetings. (Doc. 14 at 11). "A plaintiff does not demonstrate pretext by showing that the defendant had a mistaken belief about the facts that formed the basis for the alleged nondiscriminatory reason. Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts on which it based its nondiscriminatory reason." *Ekokotu v. Boyle*, 294 Fed. Appx. 523, 526 (11th Cir. 2008). The Court does not "sit to review the accuracy of the employer's fact findings." *Vickers v. Hyundai Motor Mfg. Alabama, LLC*, __ Fed. Appx.__, 2016 WL 1459112, at *3 (11th Cir. 2016), *citing Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n. 16 (11th Cir. 1998). Plaintiff presented evidence that Defendants' reasoning is incorrect, but did not present any evidence that Defendant's reasoning is pretextual. Therefore, Plaintiff has not met its burden under *McDonnell Douglas*.

11

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 11) is **GRANTED**.

**SO ORDERED**, this  7th  day of   September   2016.

_____/s/ Leslie J. Abrams_____
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**